UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

BERNICE JENKINS,

    Plaintiff,

v.

NANCY A. BERRYHILL, Acting Commissioner of Social Security,

    Defendant.

No. 2:18-cv-00058 CKD

ORDER

Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). The parties have consented to Magistrate Judge jurisdiction to conduct all proceedings in the case, including the entry of final judgment. For the reasons discussed below, the court will deny plaintiff's motion for summary judgment and grant the Commissioner's cross-motion for summary judgment.

BACKGROUND

Plaintiff, born February 12, 1959, applied for SSI and disability insurance benefits (DIB) in 2014, alleging disability beginning February 8, 2011. Administrative Transcript ("AT") 18, 29. Plaintiff alleged she was unable to work due to hip and wrist pain, back and shoulder issues, joint problems, sciatic nerve problems, and depression. AT 100. In a decision dated October 3,

2016, the ALJ determined that plaintiff was not disabled.[1] AT 30. The ALJ made the following findings (citations to 20 C.F.R. omitted):

> 1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2011. The claimant has not engaged in substantial gainful activity since February 8, 2011, the application date.
>
> 2. The claimant has not engaged in substantial gainful activity since February 8, 2011, the alleged onset date.
>
> 3. The claimant has the following severe impairments: mild bilateral hip osteoarthritis, mild degenerative disc disease at L4-S1, minimal shoulder osteoarthritis, mild cervical thoracic scoliosis.
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program, 42 U.S.C. § 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. § 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

2

impairments in 20 CFR Part 404, Subpart P, Appendix 1.

    5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work, except she can occasionally lift or carry up to 50 pounds, frequently lift or carry 25 pounds, can sit up to six hours in an eight-hour day, stand or walk up to six hours, can push or pull as much as she can lift or carry, can frequently climb ramps and stairs, occasionally climb ladders, ropes or scaffolds, frequently stoop, kneel and crouch, occasionally crawl, and can have no exposure to unprotected heights .

    6. The claimant is capable of performing past relevant work as a manager department, home attendant, and automotive detailer. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

    7. The claimant has not been under a disability, as defined in the Social Security Act, from February 8, 2011, through the date of this decision.

AT 20-30.

The ALJ also made alternative step five findings that, considering the claimant's age, work experience, and residual functional capacity ("RFC"), there were other jobs existing in the national economy that she could perform. AT 29. The ALJ found that plaintiff had acquired work skills from past relevant work that were transferable to other occupations. AT 29. When asked about jobs which could be performed by someone with the same age, education, past relevant work experience and RFC as plaintiff, and which required skills acquired in plaintiff's past relevant work but no other skills, the vocational expert ("VE") listed the representative occupations of retail sales clerk, light, with 2.4 million jobs nationally and 235,000 in the state. AT 29. The ALJ concluded that, although plaintiff's additional limitations did not allow her to perform the full range of medium work, considering her age, education, and transferable work skills, a finding of 'not disabled' was appropriate. AT 29. The ALJ found plaintiff not disabled for this alternate reason, along with the ability to perform past relevant work. AT 29.

ISSUES PRESENTED

Plaintiff argues that the ALJ committed the following errors in finding plaintiff not disabled: (1) the ALJ erred at Step Two by not including knee and upper extremity pain as severe impairments; (2) the ALJ erred by rejecting Dr. Haddadan's opinion and failing to consider medication side effects; (3) the ALJ erred at Steps Four and Five.

3

## LEGAL STANDARDS

The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

The record as a whole must be considered, Howard v. Heckler, 782 F.2d 1484, 1487 (9th Cir. 1986), and both the evidence that supports and the evidence that detracts from the ALJ's conclusion weighed. See Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985). The court may not affirm the ALJ's decision simply by isolating a specific quantum of supporting evidence. Id.; see also Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). If substantial evidence supports the administrative findings, or if there is conflicting evidence supporting a finding of either disability or nondisability, the finding of the ALJ is conclusive, see Sprague v. Bowen, 812 F.2d 1226, 1229-30 (9th Cir. 1987), and may be set aside only if an improper legal standard was applied in weighing the evidence. See Burkhart v. Bowen, 856 F.2d 1335, 1338 (9th Cir. 1988).

## ANALYSIS

### A. Non-Severe Impairments

Plaintiff asserts that the ALJ erroneously failed to include right knee pain and bilateral arm pain as severe impairments at Step Two.

As to right knee pain, the ALJ wrote that "the evidence fails to establish any impairment involving suspected right knee meniscal degeneration . . . that had any greater than a slight or

4

minimal ability on the claimant's ability to perform basic work activities." AT 21. "[A]lthough some physical exams show she had a positive McMurray's test[2], the record as a whole contains no objective testing that substantiates ongoing impairment." AT 21. The ALJ cited a June 2016 MRI of the right knee, noting (1) an old small tear or small defect or chondromalacia at the white zone of the mid body of the lateral meniscus; and (2) small right knee joint effusion and small joint effusion at the proximal right tibiofibular joint. AT 931. The ALJ also cited July 2016 medical records noting severe bilateral knee pain, which was "aggravated by walking and standing . . . [and] relieved by pain/RX meds and rest." AT 945; see also AT 1024 (July 2016 note of positive McMurray's test and pain with flexion and extension, but otherwise normal findings as to right knee joint).[3]

As to upper extremity pain, the ALJ concluded that "the medical evidence does not include any signs, symptoms, or laboratory findings indicating that the claimant suffers from any kind of wrist, arm or hand limitations, including no evidence of carpal tunnel syndrome." AT 21. The ALJ cited a June 2014 exam finding the bilateral elbows to have no swelling or deformity and a full range of motion; a full range of motion and no evidence of carpal tunnel syndrome in the right forearm/wrist; and no evidence of swelling, effusion, erythema, warmth, or deformity of the shoulders, elbows, and wrists. AT 845. The ALJ also cited a January 2016 imaging study finding no abnormalities in the bilateral upper extremities. AT 962-963.[4]

---

[2] A test for meniscal tears in the knee. See https://physicaltherapyweb.com/mcmurray-test-orthopedic-examination-knee/ (last visited 2/28/19).

[3] Plaintiff additionally cites July 2016 notes of plaintiff reporting "clicking and locking in her right knee, and increased numbness and tingling in the leg. She has chronic sciatica in that leg and is seeing the chiropractor regularly." AT 1016. Plaintiff also cites July 2016 records noting that plaintiff reported right knee pain as a 7/10 with medication and 10/10 without, increased difficulty bending at the knee, lots of popping and locking, having to drag her knee when she walks, and difficulty operating the gas/brake pedals on the car. AT 954. However, another July 2016 treatment note indicated that plaintiff "has no physical complaints at this time." AT 25, 949. This brief record of reported knee pain is not inconsistent with the ALJ's conclusion that there was no objective evidence of "ongoing impairment" in the right knee.

[4] Plaintiff additionally cites a January 2013 diagnosis of carpal tunnel syndrome and shoulder pain and July 2014 records noting chronic shoulder pain. AT 748, 850. Plaintiff also cites a July 2015 diagnosis of carpal tunnel syndrome and shoulder pain. (AT 892.) Progress notes from a

An impairment or combination of impairments is deemed to be severe at step two if it "significantly limits [plaintiff's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 404.1521(a). An impairment is "not severe" only if it "would have no more than a minimal effect on an individual's ability to work, even if the individual's age, education, or work experience were specifically considered." SSR 85-28. "The step-two inquiry is a de minimis screening device to dispose of groundless claims. An impairment or combination of impairments can be found not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." Smolen v. Chater 80 F.3d 1273, 1290 (9th Cir. 1996); see also Edlund v. Massanari, 253 F.3d 1152, 1158 (9th Cir. 2001). Impairments must be considered in combination in assessing severity. 20 C.F.R. § 404.1523.

As the Ninth Circuit explained in Buck v. Berryhill, 869 F.3d 1040, 1048-49 (9th Cir. 2017), "Step two is merely a threshold determination meant to screen out weak claims. It is not meant to identify the impairments that should be taken into account when determining the RFC. In fact, in assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are imposed by all of an individual's impairments, even those that are not 'severe.' The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not.") (Internal quotes and citations omitted.)

Here, in formulating the RFC, the ALJ considered treatment notes and objective examination findings as to plaintiff's reported problems with her right knee and upper extremities. AT 24-25. This included consultative examiner Dr. David Osborne's June 2014 examination, which referenced plaintiff's complaints of "bilateral knee pain, right wrist pain, and bilateral elbow pain, as well as pseudolocking of the elbows and knees." AT 24; see AT 843. "Dr. Osborne noted that the claimant had an unremarkable physical exam to both knees, no objective findings of impairment to the right wrist, and a normal elbow exam." AT 24; see AT 847. Dr. Osborne concluded: "Based on the exam, there is no medically determinable impairment

---

July 2014 disability evaluation indicate that plaintiff "wears wrist braces for 6 years to prevent her elbows locking and weakness of her wrists." AT 853.

that would limit the claimant's function from an orthopedic standpoint." AT 847 (emphasis in original). The RFC analysis also considered a June 2014 primary care exam with largely normal findings, including a full range of motion in both elbows and the right forearm/wrist, and a January 2016 imaging study with normal findings for the bilateral upper extremities, both records referenced at Step Two. AT 25, 845, 962-963. Moreover, while the ALJ did not find plaintiff severely impaired by carpal tunnel syndrome, he recognized minimal shoulder osteoarthritis as a severe impairment, as it was clinically correlated on an x-ray. AT 20, 856. Plaintiff has not shown harmful error at Step Two.

### B. Medical Opinion

Plaintiff asserts that the ALJ erred by assigning little weight to the opinion of treating physician Dr. Kayan Haddadan, who filled out a medical source statement form for plaintiff in August 2016. AT 27, 1030-1033. The ALJ addressed Dr. Haddadan's statement as follows:

> Dr. Haddadan opined that the claimant could sit, stand, and walk less than two hours in an eight-hour day, needed to shift positions during the day, that she would need to take unscheduled breaks, required a cane, could not lift more than 10 pounds with either hand, rarely twist, stoop or crouch, could occasionally climb stairs, had limitations in manipulation, would likely be off task 25 percent or more of the time, and would be absent more than four days per month. [Record citation.] The undersigned gives this opinion little weight, because it is inconsistent with Dr. Haddadan's treatment notes which show he suggested the claimant use conservative treatment such as stretching and heat and ice for her symptoms, and because there is no support for such extreme limitations in the medical evidence of record which shows generally mild findings on imaging and generally normal physical examinations.

AT 27; see AT 1030-1033.

The weight given to medical opinions depends in part on whether they are proffered by treating, examining, or non-examining professionals. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). Ordinarily, more weight is given to the opinion of a treating professional, who has a greater opportunity to know and observe the patient as an individual. Id.; Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

To evaluate whether an ALJ properly rejected a medical opinion, in addition to considering its source, the court considers whether (1) contradictory opinions are in the record, and (2) clinical findings support the opinions. An ALJ may reject an uncontradicted opinion of a treating or examining medical professional only for "clear and convincing" reasons. Lester, 81 F.3d at 831. In contrast, a contradicted opinion of a treating or examining professional may be rejected for "specific and legitimate" reasons, that are supported by substantial evidence. Id. at 830. While a treating professional's opinion generally is accorded superior weight, if it is contradicted by a supported examining professional's opinion (e.g., supported by different independent clinical findings), the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)). In any event, the ALJ need not give weight to conclusory opinions supported by minimal clinical findings. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999) (treating physician's conclusory, minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751. The opinion of a non-examining professional, without other evidence, is insufficient to reject the opinion of a treating or examining professional. Lester, 81 F.3d at 831.

Defendant argues that Dr. Haddadan does not meet the definition of a treating physician[5] because there are only two medical records from this source: a January 2016 electrodiagnostic study reflecting normal findings and a July 2016 office visit for neck, low back, and knee pain. AT 962-963, 945-946. However, Dr. Haddadan's medical source statement indicates that he had monthly appointments with plaintiff for the past twelve months. AT 1030.

Assuming arguendo that Dr. Haddadan is a treating source, the ALJ supplied specific and legitimate reasons for discounting his conclusory findings as to plaintiff's functional limitations. First, Dr. Haddadan prescribed "gentle stretching exercises after hot shower or heat pack and . . . ice at night" for her neck, back, and knee pain in July 2016. AT 947. After plaintiff reported that her pain was relieved by medication and rest, Dr. Haddadan also increased her pain medication. AT 945, 948. Earlier records note that plaintiff's chronic pain was well-controlled until she ran

---

[5] A treating source is someone who has "an ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1527(a)(2).

out of pain medication.  AT 850.  Elsewhere in the decision, the ALJ noted that "[w]hile the claimant has complained of severe pain levels, . . . her treatment has been essentially routine and/or conservative in nature . . . Further, the record also reveals that the treatment has been generally successful in controlling those symptoms, as the claimant reported improvement in her symptoms with physical therapy and medications."  AT 26.  The ALJ reasonably cited plaintiff's conservative and generally effective treatment as a reason to discount the extreme limitations posited in Dr. Haddadan's source statement.  See Senko v. Astrue, 279 Fed. Appx. 509, 511 (9th Cir. May 22, 2008) (unpublished) (ALJ properly rejected treating doctor's opinion where opinion was not supported by doctor's treatment notes, which showed claimant was "doing well on her medications").

Second, the ALJ explained that "there is no support for such extreme limitations in the medical evidence of record which shows generally mild findings on imaging and generally normal physical examinations."  AT 27; see AT 24-26.  Examination findings showed consistently normal gait, strength, range of motion, reflexes, and sensation, consistent with the mild objective findings discussed above.  AT 814, 845, 854, 880, 956. 983-984.  See Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005) ("[W]hen evaluating conflicting medical opinions, an ALJ need not accept the opinion of a doctor if that opinion is brief, conclusory, and inadequately supported by clinical findings.").

Plaintiff contends that the ALJ did not sufficiently consider the side effects from her medications when formulating the RFC.  In his medical source statement, Dr. Haddadan noted that plaintiff was taking Norco, Valium, Gabapetrin, and Meloxican.  AT 1030.  She "is not able to work while taking these medications," Dr. Haddadan noted.  AT 1030.  However, this too is a conclusory opinion with little record support.  Although plaintiff stated at a November 2015 appointment that Gabapentin made her sleep the whole day (AT 879), plaintiff's doctor reduced her dose (AT 881), and at subsequent exams, plaintiff appeared alert, active, and oriented and did not complain of sleepiness.  AT 844, 950, 956, 983.  The court finds no error in the weighing of Dr. Haddadan's opinion.

////

C. Steps Four and Five

Plaintiff asserts that the ALJ erred at Step Four because the finding that plaintiff could perform medium work was inconsistent with Dr. Haddadan's opinion and the overall medical record. Those arguments have been addressed, above.

Plaintiff next argues that the ALJ erred at Step Five due to a factual error: "The unfavorable decision states that Plaintiff was born February 12, 1959 and was fifty-one (51) years of age at the time of the hearing." (ECF No. 18 at 21.) Plaintiff states that she was 57 at the time of the hearing, and this fact is significant because of the ramifications of plaintiff's advanced age at the time of application and hearing. (Id.) However, the ALJ correctly stated that plaintiff was "51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date." AT 29. The ALJ then correctly found that plaintiff "subsequently changed age category to advanced age" during the course of the administrative proceedings. AT 29. See 20 C.F.R. § 404.1563(d)-(e). Plaintiff has not shown error on this basis.

CONCLUSION

For the reasons stated herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 18) is denied;

2. The Commissioner's cross-motion for summary judgment (ECF No. 19) is granted; and

3. Judgment is entered for the Commissioner.

Dated: March 4, 2019

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

2/jenkins0058.ssi.ckd

10